SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
   Including Professional Corporations
JENNIFER G. REDMOND, Cal. Bar No. 144790
BROOKE S. PURCELL, Cal. Bar No. 260058
MATTHEW W. TURETZKY, Cal. Bar No. 280997
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        jredmond@sheppardmullin.com
              bpurcell@sheppardmullin.com
              mturetzky@sheppardmullin.com

Attorneys for Plaintiff
FEEDZAI, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| FEEDZAI, INC., a Delaware Corporation,<br><br>      Plaintiff,<br><br>      v.<br><br>PETER SOFARELLI, an individual; and DOES 1-10, inclusive,<br><br>      Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br>**(1) BREACH OF CONTRACT**<br>**(2) BREACH OF DUTY OF LOYALTY**<br>**(3) CONVERSION**<br>**(4) VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT, CIV. CODE, § 3426.1,** *ET SEQ.*<br>**(5) VIOLATION OF FEDERAL DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836,** *ET SEQ.* |

Plaintiff Feedzai, Inc. ("Feedzai") hereby alleges and complains as follows:

## PARTIES

1. Feedzai is, and at all times pertinent to this action was, a Delaware corporation authorized to do business in California, with its principal place of business in San Mateo County. Feedzai's office is located at 1875 S. Grant Street, #950, San Mateo, California 94402.

2. Feedzai is informed and believes and thereon alleges that Defendant Peter Sofarelli is, and at all times pertinent to this action was, an individual residing in the State of North Carolina.

3. Feedzai does not know the true names and capacities of the defendants identified herein as Does 1 through 10, inclusive. Feedzai will seek leave of court to amend this Complaint to allege said Defendants' true names and capacities as soon as Feedzai ascertains them.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

5. Feedzai's Federal Defend Trade Secrets Act ("DTSA") claim arises under federal law and therefore jurisdiction is proper under 28 U.S.C. § 1331. Jurisdiction is proper over the pendent state law claims pursuant to 28 U.S.C. § 1367 because the claims arise out of the same nucleus of operative facts as Feedzai's DTSA claim.

6. Alternatively, jurisdiction is proper under 28 U.S.C. § 1332 because the parties have complete diversity of citizenship and the matter in controversy exceeds, exclusive of interest and costs, the sum of Seventy-Five Thousand Dollars ($75,000). Mr. Sofarelli is a citizen of and resides in the state of North Carolina. Feedzai, Inc. is a Delaware Corporation with its principal place of business in San Mateo, California.

7. This Court is the proper venue because the acts, transactions, and occurrences giving rise to this action, including the making of and breach of agreements described in this Complaint, occurred in the County of San Mateo in the State of California.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

8.  Feedzai is a leading platform enabling e-commerce through the use of artificial intelligence and big data. Feedzai's mission is to make commerce safe. In that vein, the world's largest banks, payment providers, and retailers use Feedzai's machine learning technology to manage risks associated with banking and shopping—whether it is in person, online, or via mobile devices. Feedzai's business is critically dependent on developing and defending its cutting edge intellectual property. Feedzai's proprietary technology was first developed in university research and at the European Space Agency. It is now being put to use by Feedzai clients to fight fraud, secure transactions, and confidently grow their businesses.

9.  Feedzai has two main product lines. One focuses on commercial merchants; the other focuses on banking institutions. Feedzai's merchant products include tools that help merchants manage risks and keep their customers safe from fraud across all channels, including threats posed by transaction fraud and account takeover attacks. Feedzai uses machine learning to enable merchant customers to identify and verify transactions while reducing false declines. Feedzai's banking products include tools that can help fight transaction fraud, streamline the account opening process, help keep customer accounts safe from account takeovers, and comply with various laws and regulations that target commercial merchants. These tools help banks reduce friction for good customers while enabling banks to more accurately identify potential fraud.

10. Sofarelli was employed by Feedzai as a Vice President of Sales, North America from August 28, 2017 until April 25, 2018. Soferelli's signed Offer Letter is attached hereto as **Exhibit A.** As a Vice President of Sales, North America, Sofarelli was assigned the Northeast United States as his sales territory. He was responsible for driving sales of Feedzai's banking products and services in that territory. Sofarelli reported to Phong Rock, the Senior Vice President of Sales (North America). Rock assigned sales leads to Sofarelli after the leads were generated and qualified by Feedzai's inside sales and sales operations teams.

11.     In order to do his job, Soferelli was given access to Feedzai Proprietary Information, a term defined in the Proprietary Information and Inventions Agreement ("PIIA") that Sofarelli signed on August 13, 2017. Sofarelli's signed PIIA is attached hereto as **Exhibit B.**

12.     The PIIA defines Proprietary Information to include, among other things, all "business, technical and financial information (including, without limitation, the identity of and information relating to customers or employees)." Ex. B, ¶ 4. The PIIA required, among other things, that Sofarelli "hold in confidence and not disclose or, except within the scope of [his] employment, use any Proprietary Information." *Id.*  It further required that Sofarelli "promptly return to Company all items containing or embodying Proprietary Information (including all copies), except that [he] may keep . . . personal copies of (i) [his] compensation records, (ii) materials distributed to shareholders generally and (iii) this Agreement." *Id.*

13.     The PIIA warned that Sofarelli shall "have no expectation of privacy with respect to Company's telecommunications, networking or information processing systems (including, without limitation, stored computer files, email messages and voice messages) and that [your] activity and any files or messages on or using any of those systems may be monitored at any time without notice." *Id.*

14.     Sofarelli's obligations under the PIIA "continue in effect after termination of [his] employment." *Id.* ¶ 8.

15.     In addition to the PIIA, Sofarelli signed an acknowledgement of Feedzai's Information Security Policy and Password Policy. Both policies were designed to secure and protect Feedzai's Proprietary Information. The Information Security Policy and Password Policy and Sofarelli's signed acknowledgement are attached hereto as **Exhibit C**. In the signed acknowledgment, Sofarelli declared "to have received a copy of the above mentioned company's policies, which are currently in place, which I [Sofarelli] have read and understand." Ex. C, at 16.

16.     Feedzai's Information Security Policy provides, among other things, that:

- "System Administrators at Feedzai are allowed to monitor equipment, network traffic or any other means for security auditing and maintenance procedures." *Id.* at 4.

- "Any information belonging to Feedzai, including documents, source code and datasets can only reside in Feedzai's authorized equipment." *Id.*

- Employees are prohibited from "shar[ing], copy[ing] or mov[ing] any kind of proprietary information with outside parties, computers or devices." *Id.* at 5.

- Employees are prohibited from "us[ing], allow[ing] or support[ing] any kind of data exfiltration/theft technique." *Id.*

- Employees are prohibited from "enabl[ing] forwarding or other mechanisms of email message re-sending to other accounts besides your personal Feedzai account." *Id.*

17. Feedzai's Password Policy sets forth specific requirements for employees' passwords, including complexity criteria and password protection requirements. *Id.* at 11. The Password Policy further reinforces Feedzai's efforts to secure its Proprietary Information.

18. Following the termination of Sofarelli's employment, Feedzai's information technology team learned that Sofarelli stole a large quantity of Feedzai's Proprietary Information by transmitting it from his Feedzai Google Suite account to his personal email account on April 18, 2018, *the day before Sofarelli submitted his resignation from Feedzai*. The Proprietary Information that Sofarelli stole from Feedzai includes but is not limited to Feedzai account lists, key account reviews, deal plans, customer profiles, sales training, client workshop sessions, pricing models, client presentations, product features, deal financials, client contracts, and master service agreements ("MSAs").

19. Sofarelli's unlawful acquisition of Feedzai's Proprietary Information is particularly concerning given Mr. Sofarelli's short tenure at Feedzai (eight months) and that he left Feedzai to work for a competitor, H2O.ai. Sofarelli took hundreds of files, all of which constitute Feedzai Proprietary Information. Some key examples illuminate the extreme sensitivity of the files taken and the significant damage that such theft may cause Feedzai and its customers to the benefit of Sofarelli and Feedzai's competitors.

20. For example, one of the documents taken by Mr. Sofarelli is a file titled "Feedzai for Banks 101 v11.pptx." It relates to a highly confidential presentation that was made to CapitalOne, a Feedzai customer. According to Mr. Sofarelli's LinkedIn profile, his current

employer, H2O.ai, "is proud of its growing customer base which includes Capital One." A copy of Mr. Sofarelli's LinkedIn profile from July 23, 2018 is attached hereto as **Exhibit D**. The "Feedzai for Banks" presentation was subject to a mutual non-disclosure agreement between Feedzai and CapitalOne and was otherwise protected from disclosure by Feedzai pursuant to its PIIA and Information Security policies. Feedzai never authorized its disclosure for Mr. Sofarelli's personal use, let alone its potential disclosure to his new employer.

21. Sofarelli also took a Feedzai PowerPoint presentation that was created for a leading financial institution. The purpose of this presentation was to demonstrate how Feedzai would deploy its highly-proprietary technology at the financial institution. The presentation contained sensitive Proprietary Information of both Feedzai and the financial institution because it described how Feedzai's technology would work with the financial institution's technology and data. The presentation was subject to a mutual non-disclosure agreement for this reason.

22. Sofarelli also took an Excel spreadsheet created by Feedzai's sales team to develop pricing models for its products and services. If such a document is shown to a third party (such as H2O.ai), it would give the third party extraordinary insights into how Feedzai develops its pricing proposals, thereby enabling a competitor to undercut Feedzai's pricing of its products and services.

23. Additionally, Sofarelli appropriated a list of decisionmakers and key points of contact (including names and contact information) of customers and potential customers who attended Feedzai's select AI Deep Dive event, which is presented in connection with the Money 20/20 conference. Feedzai is a marquee partner for this event, which bills itself as an event that brings "together the artificial intelligence (AI) thought leaders who are disrupting the way in which consumers and businesses manage, spend and borrow money." *See* https://us.money2020.com/ai-deep-dive (last accessed July 23, 2018).

24. In yet another example, Sofarelli took a Feedzai presentation made to a credit union processor. Several slides of this presentation contain Feedzai Proprietary Information relating to its technology, including highly confidential information concerning how Feedzai works with clients and information about Feedzai's data science models. If H2O.ai, Sofarelli's

current employer, were to obtain this presentation, Feedzai would be in violation of the confidentiality provisions of its master services agreement with the credit union processor. Importantly, there was absolutely no legitimate work-related purpose for Sofarelli to take this file; he never worked on the credit union deal while employed by Feedzai. On information and belief, Sofarelli's sole purpose for the theft of the Feedzai presentation was to engage in competition with Feedzai to Feedzai's detriment.

25. Similarly, Sofarelli stole a Feedzai presentation made to a leading credit card brand and potential Feedzai customer. This presentation was made pursuant to a mutual non-disclosure agreement between Feedzai and the potential client. The presentation included information about Feedzai's data science models and other current clients. As was the case with the presentation to the credit union processor, Mr. Sofarelli was not involved in this deal and thus had absolutely no legitimate business reason to possess this information.

26. Sofarelli knew that transmitting the above-described Feedzai Proprietary Information to his personal email was prohibited. He acknowledged receipt of the relevant policies. Moreover, after Sofarelli transmitted the data to his personal email account, he deleted the email transmitting the Proprietary Information from the sent messages folder of his Feedzai email account in order to conceal his illicit activities.

27. When Feedzai learned of Sofarelli's theft of the Proprietary Information, Feedzai immediately sought to recover its Proprietary Information through a cease and desist demand letter issued to Sofarelli. To date, Sofarelli has conditioned all cooperation in the return of Feedzai's Proprietary Information on Feedzai's agreement to settle claims against him (which condition Feedzai cannot agree to without first understanding the full scope of Sofarelli's unlawful activities).

### FIRST CAUSE OF ACTION
### (Breach of Contract)

28. Feedzai re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 27, above, as though fully set forth herein.

29. As set forth in detail above, Sofarelli entered into a contract by signing an Offer Letter and a PIIA that set forth terms of his employment and certain requirements relating to the safeguarding and use of Feedzai Proprietary Information. Sofarelli also signed an acknowledgement of an Information Security Policy that prohibited Sofarelli from transmitting Feedzai Proprietary Information to Sofarelli's personal email account.

30. Feedzai performed all of its obligations under the Offer Letter by employing Sofarelli and under the PIIA by providing him access to the Proprietary Information necessary to do his job.

31. Sofarelli breached his obligations under the agreements by stealing Feedzai's Proprietary Information.

32. Sofarelli further breached his obligations under the agreements by failing and refusing to return Feedzai Proprietary Information after he was instructed to do so in writing.

33. Feedzai has been damaged in an amount to be established by proof at trial.

34. Sofarelli's breach of contract was a substantial factor in causing Feedzai's harm.

35. On information and belief, Feedzai alleges that Sofarelli's intentional acts are willful, malicious, oppressive and fraudulent and therefore Feedzai is entitled to punitive damages as a result thereof.

## SECOND CAUSE OF ACTION

### (Breach of Duty of Loyalty)

36. Feedzai re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 35 above, as though fully set forth herein.

37. Sofarelli was a Feedzai employee and as such had a duty to act with the utmost good faith and solely for the benefit of Feedzai in all matters connected with his employment. Sofarelli voluntarily accepted and assumed this duty of loyalty.

38. Sofarelli was further bound by express written agreements not to take or disclose Proprietary Information.

39. Sofarelli breached his duty of loyalty to Feedzai by wrongfully and knowingly taking, removing, failing to return Feedzai Proprietary Information, and on information and belief, using Feedzai Proprietary Information for his own benefit and disclosing Feedzai Proprietary Information to unauthorized third parties.

40. The Feedzai Proprietary Information at issue was protected by Feedzai and is confidential, proprietary, privileged and is not a matter of general knowledge. Sofarelli was not authorized to, and was specifically prohibited from, taking or disclosing Feedzai Proprietary Information.

41. Feedzai has suffered damage proximately caused by Sofarelli's intentional acts in an amount to be established by proof at trial.

42. Sofarelli's conduct was a substantial factor in causing Feedzai's damages.

43. On information and belief, Feedzai alleges that Sofarelli's intentional acts are willful, malicious, oppressive and fraudulent and therefore Sofarelli is entitled to punitive damages as a result thereof.

### THIRD CAUSE OF ACTION

### (Conversion)

44. Feedzai re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 43, above, as though fully set forth herein.

45. Under California Labor Code section 2860, every item of Proprietary Information that Sofarelli received or acquired by virtue of his employment belongs to Feedzai, regardless of whether Sofarelli acquired it lawfully or unlawfully, or during or after the expiration of the term of his employment. Feedzai, at all relevant times, owned the Proprietary Information, including documents and materials stored and contained on its files, servers and computers.

46. Sofarelli, by and through the wrongful acts alleged above, intentionally and substantially interfered with Feedzai's property by wrongfully taking possession of and removing this Proprietary Information located on Feedzai's servers, files and/or on its premises.

SMRH:487161029.1                                                                  PLAINTIFF FEEDZAI, INC.'S COMPLAINT

47. Upon learning of Sofarelli having taken possession of Feedzai Proprietary Information, Feedzai demanded immediate return of the materials, and Sofarelli refused to return them without condition, in interference with Feedzai's ownership and possession.

48. Feedzai did not consent to Sofarelli's taking and removal of Feedzai Proprietary Information.

49. Feedzai was harmed by the taking and removal of its Proprietary Information.

50. Sofarelli's taking and removal of Feedzai's Proprietary Information was a substantial factor in causing Feedzai's harm.

51. Feedzai is entitled to the specific recovery of Feedzai materials from Sofarelli.

52. Alternatively, Feedzai has suffered damages proximately caused by Sofarelli's intentional acts in an amount to be established by proof at trial.

53. On information and belief, Feedzai alleges that Sofarelli's intentional acts are willful, malicious, oppressive and fraudulent and therefore Feedzai is entitled to punitive damages as a result thereof.

**FOURTH CAUSE OF ACTION**

**(Violation Of California Uniform Trade Secrets Act, Civ. Code, § 3426.1, *Et Seq.*)**

54. Feedzai re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 27, above, as though fully set forth herein.

55. Feedzai owns and possesses certain trade secret information. These trade secrets include account lists, key account reviews, deal plans, customer profiles, sales training, client workshop sessions, pricing models, client presentations, product features, deal financials, client contracts, and MSAs.

56. These trade secrets have actual or potential independent economic value from not being generally known to the public or other persons who could obtain economic value from their disclosure and/or use. For example, Feedzai's confidential account lists and customer profiles would enable Feedzai's competitors to identify and target companies interested in

Feedzai's products and services, in order to better compete with Feedzai. Feedzai's deal plans would similarly expose Feedzai's confidential business strategies and deal terms to their competitors, allowing Feedzai's competitors to more effectively compete with and poach Feedzai's business and business opportunities. Likewise, possession of Feedzai's pricing model would enable a competitor to undercut Feedzai's pricing.

57. Feedzai has undertaken robust efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue. These efforts include, but are not limited to, the imposition of an Information Security Policy, which Sofarelli acknowledged, (Ex. C), the proscriptive requirements for the use of passwords to protect data on its computers and servers subject to a Password Policy, (Ex. C), the use of a PIIA that emphasizes all employees' duty to maintain the secrecy of Feedzai's Proprietary Information (Ex. B), and the use of mutual nondisclosure agreements with clients and prospective clients.

58. Sofarelli improperly acquired trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means and, on information and belief, Sofarelli is using and disclosing or threatened to use or disclose the trade secrets acquired by illegal means without Feedzai's knowledge and/or consent.

59. In violation of Feedzai's rights, Sofarelli unlawfully acquired and attempted to conceal his unlawful acquisition of Feedzai's trade secrets in the improper and unlawful manner as alleged herein. Sofarelli's unlawful acquisition of Feedzai's trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive. Feedzai is therefore entitled to exemplary damages under Cal. Civ. Code § 3426.3(c).

60. On information and belief, if Sofarelli is not enjoined as more specifically alleged in the Prayer for Relief, he will continue to use and/or disclose Feedzai's trade secrets for his own benefit and to Feedzai's detriment and/or threaten the use or disclosure of trade secrets.

61. As the direct and proximate result of Sofarelli's conduct, Feedzai has suffered and will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Feedzai's remedy at law is inadequate, Feedzai seeks, in addition to damages, preliminary and permanent injunctive relief to recover and

protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. Feedzai operates in a very competitive market and will continue to suffer irreparable harm absent injunctive relief. Pursuant to Cal. Civ. Code § 3426.2, Feedzai is entitled to an injunction against the unlawful acquisition and continued use or disclosure of trade secrets and/or threatened use or disclosure of trade secrets as more specifically alleged in the Prayer for Relief.

62. As a further proximate result of the unlawful acquisition and use of Feedzai's trade secrets, Sofarelli was unjustly enriched. Additionally, pursuant to Cal. Civ. Code § 3426.4 and other provisions of law, Feedzai is entitled to an award of attorney's fees for Sofarelli's willful and malicious misappropriation or threatened misappropriation of Feedzai's trade secrets.

## FIFTH CAUSE OF ACTION

**(Violation Of Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *Et Seq.*)**

63. Feedzai re-alleges and incorporates by reference each of the allegations in Paragraphs 1 through 27, above, as though fully set forth herein.

64. Feedzai owns and possesses certain trade secret information. These trade secrets are contained within the files taken by Sofarelli, and include account lists, key account reviews, deal plans, customer profiles, sales training, client workshop sessions, pricing models, client presentations, product features, deal financials, client contracts, and MSAs.

65. These trade secrets have actual or potential independent economic value from not being generally known to the public or other persons who could obtain economic value from its disclosure and/or use. For example, Feedzai's confidential account lists and customer profiles would enable Feedzai's competitors to identify and target companies interested in Feedzai's products and services, in order to better compete with Feedzai. Feedzai's deal plans would similarly expose Feedzai's confidential business strategies and deal terms to their competitors, allowing Feedzai's competitors to more effectively compete with and poach Feedzai's business and business opportunities. Likewise, possession of Feedzai's pricing model would enable a competitor to undercut Feedzai's pricing.

66.     Feedzai's account lists, key account reviews, deal plans, customer profiles, sales training, client workshop sessions, pricing models, client presentations, product features, deal financials, client contracts, and MSAs relates to products and services used, sold, shipped and/or ordered in, or intended to be used, sold, shipped and/or ordered in, interstate or foreign commerce.

67.     Feedzai has undertaken robust efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.  These efforts include, but are not limited to, the imposition of an Information Security Policy, which Sofarelli acknowledged, (Ex. C), the use of passwords to protect data on its computers and servers subject to a Password Policy, (Ex. C), the use of a PIIA that emphasizes all employees' duty to protect and maintain the secrecy of Feedzai's Proprietary Information (Ex. B), and the use of mutual nondisclosure agreements with clients and prospective clients.

68.     Sofarelli improperly acquired trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means and, on information and belief, Sofarelli is using and disclosing or threatening to use or disclose the trade secrets acquired by illegal means without Feedzai's knowledge and/or consent.

69.     Due to Feedzai's security measures, Feedzai's trade secrets are not readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

70.     In violation of Feedzai's rights, Sofarelli unlawfully acquired and attempted to conceal his unlawful acquisition of Feedzai's trade secrets in the improper and unlawful manner as alleged herein.  Sofarelli's unlawful acquisition of Feedzai's trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

71.     On information and belief, if Sofarelli is not enjoined as more specifically alleged in the Prayer for Relief, he will continue to use and/or disclose Feedzai's trade secrets for his own benefit and to Feedzai's detriment and/or threaten the use or disclosure of trade secrets.

72.     As the direct and proximate result of Sofarelli's conduct, Feedzai has suffered and will continue to suffer severe competitive harm, irreparable injury, and significant

damages, in an amount to be proven at trial.  Because Feedzai's remedy at law is inadequate, Feedzai seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests.  Feedzai operates in a very competitive market and will continue to suffer irreparable harm absent injunctive relief.

73. As a further proximate result of the unlawful acquisition and use of Feedzai's trade secrets, Sofarelli was unjustly enriched.  Additionally, Feedzai is entitled to an award of exemplary damages and attorney's fees under 18 U.S.C. §§ 1836(b)(3)(C), (D) for Sofarelli's willful and malicious misappropriation or threatened misappropriation of Feedzai's trade secrets.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays for judgment against Defendant, as follows:

1. For damages according to proof at trial and interest at the legal rate;

2. For costs of suit and attorneys' fees to the extent recoverable by law and herein incurred;

3. Equitable relief, and preliminary prejudgment remedies, including but not limited to:

(a) An order enjoining Defendant Peter Sofarelli, his agents, assigns, partners, employees, employers, and any individual or entity acting in concert with him from engaging in any of the following acts: the use, retention, transmission, access, distribution, review, destruction, copying, or reproduction of any Feedzai Proprietary Information or trade secret, including without limitation Feedzai's account lists, key account reviews, deal plans, customer profiles, sales training, client workshop sessions, client presentations, pricing models, product features, deal financials, client contracts, and master service agreements.

      (b)    An order requiring Defendant Peter Sofarelli to submit all devices he has used to access Feedzai data or any device onto which Feedzai data may have been downloaded, including, as applicable, Sofarelli's personal devices (including without limitation, cell phones, tablets, computers, and laptops) and his e-mail accounts (which include any account used by Sofarelli to access Feedzai data) to a forensic examination by a forensic vendor selected by Feedzai for the purpose of preserving evidence, identifying all Feedzai Proprietary Information and trade secrets in Sofarelli's possession, and securing the removal and deletion of all such Proprietary Information and trade secrets from such devices.

      (c)    An order requiring Defendant Peter Sofarelli to pay for the costs associated with the forensic examination described above.

      (d)    An order requiring Defendant Peter Sofarelli to: (1) describe (under oath) the methods he employed to facilitate his removal of Proprietary Information or trade secrets from Feedzai, including the date and time each of the items was taken; (2) provide a list (under oath) of each item taken; (3) provide a list (under oath) of all individuals to whom he or his counsel has disclosed each item taken from Feedzai; and (4) confirm (under oath) that all Proprietary Information and trade secrets that Sofarelli took have been returned or deleted and that no copies (or summaries of their content) have been retained.

4. For punitive damages; and,

5. For such other and further relief as the Court may deem just and proper.

Dated: July 24, 2018  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Jennifer G. Redmond*
JENNIFER G. REDMOND
BROOKE S. PURCELL
MATTHEW W. TURETZKY

Attorneys for Plaintiff
FEEDZAI, INC.